Good morning. May it please the court. Judge Larson, Judge Bush, Judge Murphy, I would like to reserve three minutes for rebuttal. Very well. My name is Doug Kemp and I represent Brightview in this matter, who is the appellant here and the third-party plaintiff below. This case is here because the Honorable Trial Judge conflated the concepts of common law in contractual indemnity and applied a tort statute of repose to bar a contractual remedy that Brightview is seeking against one of its subcontractors. If the trial court's ruling is a correct statement of Tennessee law, then the tort-based statute of repose has the perverse effect of entirely vitiating and doing away with a valuable contract. So, what if it's just an ordinary breach of contract action? The homeowner contracts to put in a pool in the backyard. The homeowner thinks the defective construction breached the contract. Would that fall within the statute of repose or is it your view that that would fall outside of it because the statute of repose is already tort? No, that's a very important distinction and that is you have to look at who the parties are to the dispute. In the case, Judge Murphy, that you proposed there was the homeowner is the one who was damaged, whether it be through a breach of contract, a negligence, tort, whatever, however you call it, they are damaged. They are the ones who are damaged and are making a claim and the claim is based on a defect, a construction defect. So, doesn't that suggest that we shouldn't be calling this a tort statute of repose because you just conceded that it does cover some breach of contract action? Well, the language in the statute certainly lends itself to calling it a tort and, in fact, the Tennessee courts have called it a tort statute of repose. Well, you seem to be adding when brought by the homeowner to the statute of repose. Well, the important thing is because what the statute talks about is in terms of someone who is recovered damage for any deficiency in the design or construction. In that case, the person who is damaged in that case, if there is a deficient construction, is the homeowner and they are making a defective claim against the general contractor. The statute itself doesn't make any distinction as to who the plaintiff is, does it? Well, what it does is it limits it to claims that are made for deficiency in the design. Why isn't a indemnification action one for deficiency? Because essentially you are saying, you were deficient, I am now on the hook for your deficient performance, so you need to identify me. So, why wouldn't that type of theory fall within recovered damages for any deficiency? The reason is because, really, where the confusion creeps in here is the word indemnity. And indemnification is used loosely and I think in manners that are not necessarily intended by the courts when they talk in terms of that. Because indemnity can be in terms of, in this case, with Ms. Hinman who has made a claim against the contractor, her general contractor, for the deficient construction of the pool. Well, the statute of repose is designed in what one of the things that two bases, the judge, relied on in saying that it applied here is that it is met as a public policy to protect contractors and people in that industry. It specifically engineers, contractors, and designers from having to be liable at whatever point into the future. It cuts it off at four years and the marking date, our starting date, is the time of substantial completion. So that's an absolute time where the contention for the cause of action starts and it expires, it's done away with, four years after that. That means after four years, there's no cause of action left for the homeowner who may want to make a claim for a deficient construction. In this case, the contract, Brightview is a general contractor, so it had to perform the work. Certainly the contract with Ms. Hinman required that certain things be done. It's a million dollar extravagant pool for rescue dogs, but it required that certain things be done and Brightview was on the hook for that, but had to perform the work through its contractors. The reason that the – so indemnity can happen in two ways. Either in the common law, there's two different ways it could happen and it could be based on a contract because Ms. Hinman has – What is the difference between common law indemnity and contractual indemnity under Tennessee law? Well, I'm sorry, I didn't – What is the difference between common law indemnity or implied indemnity and contractual indemnity under Tennessee law? Well, when you talk about contractual indemnity, there's really two different brands of that. They're two different animals and that is where the conflation comes in here. It may be based on – in this case, when Ms. Hinman made a claim against her general contractor, then the general contractor has a duty to – is on the hook for that. Now, it may be based on deficient work that was done by one of its contractors. In this matter – Under Tennessee law, even in the absence of a contract that has – provides for indemnity between the general and the sub, there could be an implied indemnity of the sub towards the general under Tennessee law. There could be in this case where even if there was no contract between Brighton and its subcontractor – So I guess what I'm getting at, I think under Tennessee law, it's pretty clear that the statute of repose applies to implied indemnity. Implied indemnity as far as for the claim, that deficient construction claim. You agree with that? For the deficient – yes. And the thing is – What I'm trying to figure out is what's the difference between implied indemnity and contractual indemnity, given that we have case law from Tennessee saying implied indemnity is covered by the statute of repose. And the key to that is looking at who are the parties making the specific claims. And implied common law indemnity, which would be, let's say, in the instance where Brighton did not have a contract with its subcontractor. Right. Or even looking at the contract and saying it says this is – of the 20 things that need to be done to get this pool, you're doing three of those. You're shooting the shotcrete. You're putting in the stubs for the plumbing, et cetera. So to the extent – and so Ms. Hinman's remedy is to go against her general contractor, who may be held to account for deficient work that was done by its subcontractor. So when you think of what Ms. Hinman's injuries or damages are, it's that she claims to have a deficient pool project. And so, therefore, she has made breach of contract and negligence claims and a lot of other claims that have since been dismissed that are not relevant here against Brightview. Brightview, if she could have, brought a claim directly against Georgia Gennite, which is one of our subcontractors. That would be that you didn't do this right, although there was no direct contractual relationship between them. So just getting back to Bush's question, though, you concede that implied indignity – implied indignity, common law indignity theories would be covered. Do you have any textual basis within the language for any deficiency in the design, construction, or whatnot of the real property that would distinguish contractual indignity from common law indignity? So what is your theory of statutory interpretation for why that language would apply to common law indignity but not contractual indignity? Well, again, it gets back to the distinction between when you're talking about contractual indignity, we have to be clear what type of contractual indignity are you talking about. Are you talking about, in this case, that Georgia Gennite breached the contract insofar as it did not perform its work properly as it should have? In that extent, that is a claim for deficient construction. So that would be covered by the statute? She had made a claim directly against Breyview for – I'm sorry, directly against Georgia Gennite for the deficient construction. However – and that's the thing we have to be clear on. Because they're not in privity of contract, she would have an implied right of, you're saying under Tennessee law, against the sub even though they're not in privity of contract. She could have joined them under – You're saying that would be covered by the statute? Yes, because that is a direct claim for deficient construction. In this case, Breyview took the – Isn't there also an implied indemnity between the general and the sub regardless of whether there's a contract? Well, it could be, and that would be a common law right. I mean, Breyview could have just said – So that's the indemnity I'm thinking of that I think you've conceded would be covered by the statute of repose. Aren't you – But in this instance, Your Honor, the distinction is that – because that's what's available at the common law. But what Breyview did, and it's the general practice in this industry, is Breyview had an additional indemnification, express indemnification language. So you – let me see if I understand. So you concede that had you not contracted, the statute of repose would apply. But your position is, but wait, but I went an extra step to get an express contractual indemnity. Therefore, that trumps the common law. It takes the teeth out of the statute of repose that otherwise would come into play because of the common law indemnity. So maybe – is that your point? Well, the point is that absent this specific contractual right that Breyview bargained for and received in its contract, that would be the case. Because everyone would be protected. So you would have contracted around the statute of repose? Everyone would be protected because the claim would be from Ms. Hinman for defective construction. And whether that be Breyview and then Breyview under common law indemnity would pass that on to Georgia Gennite. But in this case – and so everyone would be protected if Breyview had not taken that additional step. The whole purpose behind the statute of repose is to protect people in Breyview's position. They can then contract – if they're held accountable, they can contract to avoid that risk by contracting to pass that risk along. Yeah, I understand. Okay. Well, thank you. You have your rebuttal. Thank you. Good morning and may it please the Court. My name is Isaac Liu and I represent the appellee, Georgia Gennite. Your Honors, this case starts and ends with the plain text of the statute of repose, which unambiguously states that all actions to recover damages for any deficiency in construction must be brought within four years of substantial completion. And Tennessee case law makes clear that the phrase all actions includes actions for indemnity. We cite several cases in our brief for this proposition. Clinton Seafood is the main one. Counts v. Praters. And Aegis v. Future Chattanooga Development. That's a district court case from the Eastern District of Tennessee. Does a contractual indemnity claim accrue under Tennessee law? A contractual indemnity claim would accrue once the party has to pay a judgment or is liable for that claim. So given that, it seems a little odd that the accrual – if that's true, the accrual of the claim wouldn't occur until after the statute of repose had run. That's exactly right, Your Honor. That is true. The case law in Tennessee, though, specifically the Watts case, Watts v. Putnam County, a 1975 Tennessee Supreme Court case, says that could very well happen. It may run. The statute of repose may bar an action before it ever accrues. But the Tennessee Supreme Court and other cases from Tennessee hold that that's just how the legislature decided to construct the statute of repose. And the statute of repose in construction and other cases doesn't care about accrual. And in this case, did the plaintiff, the underlying plaintiff, the homeowner, bring the action against Brightview within the statute of repose? That's right, Your Honor. So there was still – There was still some time, even though – well, let me ask you this. You say the claim doesn't accrue until there's ability to – or the plaintiff has to pay. What if Brightview had sued your client immediately and brought you in as a third party immediately? What would have happened? We wouldn't be sitting here today, Your Honor, because the statute of repose would have applied. But you would have brought a motion to, what, dismiss for being not right? Or would you actually – would you concede you would have to – you would be legitimately in the lawsuit? We would be legitimately in the lawsuit. Even though the claim had not accrued at that point. Right. Because the way it works in practice, even though the claim doesn't accrue, cases interpreting third-party practice under Rule 14 say, yeah, it doesn't accrue until there's a judgment. But to conserve resources, we want defendants to bring in third-party plaintiffs who they say may be liable early on in the lawsuit. And so there is case law that says that is a proper – So you can't get out of the lawsuit because it hasn't accrued. You would use – Yes, that's correct. That's what the case law says. Why wouldn't we interpret all actions must be brought? Why wouldn't we say the date this action was brought was the date that Hyman sued him? That's a great question. So action – it doesn't say claim. It says action. There's perhaps a third-party claim that happened later. But when we think of an action, we think of the entire suit. And if we think it's the entire suit, then the relevant date would be the timing date that Hyman sued. The action was – she brought the action. I don't agree with that, Judge Murphy, because the rest of the last sentence of the statute of repose makes clear that the triggering event for the statute of repose is four years after substantial completion. I agree with that. The question is when the action was brought. So let me give you a hypothetical of what if Hyman had sued both Brightview and your client at the relevant time, and then Brightview filed a cross-claim rather than a third-party claim against your client after the relevant time. Would you say that the relevant date there was the date of the cross-claim, which would make it untimely? So a cross-claim is one between two co-defendants. Or would you say that it was brought in a timely manner because we should interpret action to be the date of the suit? I think this court should interpret action the way the Tennessee courts have interpreted it, which is the claim. Why would they say claim if all claims must be done? Well, I think it's just partly sometimes courts use actions and claims interchangeably, although I guess you could say in theory. It's kind of a tricky situation. You find yourself in a case where you have third-party claims, cross-claims. I mean, one theory for why they said action is because these indemnity-type issues, you don't know about them until later. So let's just say the relevant start date should be the action. I guess that's an interpretation, but if that's the way Tennessee interprets it, it's not reflected in the case law from Tennessee. The Clinton case does not interpret it that way, Your Honor. Do any of the cases involve these types of cross-claims, or are they all separate actions? The Eastern District of Tennessee case, Aegis, involves exactly the procedural posture that we sit in here today, which is a Rule 14 third-party claim, precisely the type of claim that we are operating under. So that case is on all fours procedurally. Can I ask you, so I kind of read the statute with precision. Do you have the statute in front of you by chance? I do. So correct me if you think my theory of what the statute means is wrong, but it says all actions to recover damages. And once you get to the damages, I see it as three different types of suits. Yes. So there is, for any deficiency in the design, planning, supervision, and whatnot, that's one type of suit. Then the second type of suit is for any injury to property arising out of any such deficiency. And then the third type is for injury to the person. So the second and third you think of, the defective design has caused other type of damage to property around or to people because of a collapsed staircase or something. So is that your view, that it's three types of potential claims that fall within the statute of proposed? It took me about 20 readings, but I do agree with you, Your Honor, that it's three. So which one do you think you're under, the first one? Yes, Your Honor, because Brightview is seeking to recover damages for deficiency in the construction of an improvement. So shouldn't we interpret that? You could interpret that broadly, but if we interpret that broadly, wouldn't it encompass the second and third? And what room would be left for the second and third? Or you could say it actually really is about the prototypical suits by the homeowner, the homeowner suing for the deficiency in the relevant claim. And here it's a suit. The indemnity suit might arise out of the deficiency, but noticeably absent from the first one is any arising out of language, that type of causation language. So I guess I wonder, number one, in your theory, does the first one swallow up the second and the third? And why wasn't a rising under in the first one? So I understand two questions from you, Your Honor. I think this is a typical case of perhaps the first one does swallow up the two. It's possible to read it that way. We usually try to avoid it. So if there's a narrow construction of the first one, where would leave room for the second and third? We would prefer that if there's any ambiguity. Your Honor, I think the answer lies in what the Tennessee Supreme Court said in the Watts case. Again, it actually analyzed the history of the statute. And it's a weird case because there's not much facts, but it actually goes through the history of these types of statutes that are proposed. And it reveals that this statute comes from a model statute that was proposed by the American Institute of Architects, the National Society of Professional Engineers, and the Associated General Contractors. And it's a model statute. And so I think if we're being realistic, the reason it's so broad is because it was proposed by interest groups back in the 60s and 70s to make it as thorough as possible. So perhaps it could have been written a little bit better. But I think the Tennessee cases interpreting this statute always reinforce the breadth of the statute and the broadness of it. And there's not a single case that limits the statute and gives it a limiting gloss to it. It's always this is a broad-based statute. So is there any limits on the first one, then, you think? I was thinking of the hypothetical. Suppose a construction company does a deficient job, gets sued by the purchaser, goes bankrupt, and just had some separate loan from a bank and defaults on the bank loan because of the deficient performance. Would your view be that the statute proposed would apply to a suit to collect the bank loan because the reason you couldn't pay is because your deficient performance led to your bankruptcy? I mean, that seems quite broad to me. But it would still satisfy your causation testing. I think that, I guess it would depend on whether we interpret recovering damages for the construction of an improvement to real property to include a case, a hypothetical, like you just suggested, which is a bank loan. I think at that point we're approaching, we're kind of stretching the language a little bit. I haven't seen a case that talks about that. All the cases that have come out of Tennessee have always either been, like you said at the beginning, perhaps someone gets injured, or in the Counts case, which I haven't talked about a little bit, that's your prototypical business dispute case, right? No one was injured in the Counts case. No one got hurt. This is something where a GC did a construction, I think renovated a yacht club in Chattanooga, and the flooring was warping. And, well, the subcontractor was responsible for the flooring, and that was your typical business dispute. And so I think that's where... Do you think it should be some type of proximate cause? So there's one theory that you shouldn't go past the first step, and that the first one of these two we just interpreted narrowly would be a suit by the purchaser of the whatever construction, and that's a suit for inefficiencies, so we cover breach of contract actions and things like that. The indemnity action is kind of the second step, and I do think there's reasonable arguments that you make for why that should be covered. But once we go past the first step, I'm not certain where it ends, and I guess that gives me some pause about whether we should go past the first step, because you seem to also express the same hesitancy I had about the bank loan, but it's not clear to me what separates the bank loan from the indemnity action under this language. Is for the causational language that's doing most of the work? I think that's what's doing the lifting. We have to say, well, is a claim for a bank loan really a claim for deficient construction? And probably it isn't. Oh, no, go ahead. It probably isn't, Your Honor, but I guess I would say that's an interesting hypothetical for another case. Luckily, we're not in that hypothetical. We have a duty to interpret the language. Our duty actually is to predict what the Tennessee Supreme Court would say about the language, right? That's exactly right, Your Honor. So to the extent that, I mean, I'm not sure about this Clinton-Secud case. It's an unpublished opinion of the Tennessee Court of Appeals, which everybody seems to accept as the truth, although, I mean, I sat on the state Supreme Court. The unpublished opinions of our intermediate Supreme Courts or intermediate appellate courts were unpublished. But if everybody's conceding that that's right, then I think we're already at the second step. Well, Your Honor, two points. The Counts case is certainly... I'm sorry, the Clinton-Seafood case is certainly... It is just... The facts of that case are so on point. The holding, right? Squarely addressing whether the statute of repellency... So if that's right, if that is a good prediction of what the Tennessee Supreme Court would say about the statute, then we're already at step two. I'm sorry, I guess I don't understand step two. What about Judge Murphy's hypothetical about... We have the first step, which is homeowner versus contractor. Second step, indemnification. Third step, bank loan. Okay, I see what you're saying. Yeah, I suppose that that's right, that the Clinton-Seafood case interprets it that way. But so does the Counts case, which is a published case. So does the Eastern District of Tennessee case, which I understand is a federal case and not binding on Tennessee courts. However, it is... That's correct. However, it is cited by Watts. And I see that my time is up. If I could just finish the question. It was cited with approval in Watts, number one, which means that the Supreme Court gave it some premature favor... some favorable treatment. And secondly, the Clinton-Seafood case was appealed to the Tennessee Supreme Court. They sought permission to appeal, and it was denied. And under this court's precedence, that's a very persuasive clue as to what the Tennessee Supreme Court would do. Because if the Tennessee Supreme Court thought that that Clinton-Seafood case was decided so egregiously wrong, it would have taken it up to correct it. I am out of time, but I'm happy to answer any additional questions. Otherwise, I would just submit that the Tennessee case law that we've cited in our brief is strong, and we would urge the court to affirm the district court's opinion dismissively. Thank you, counsel. Is there a vote? Yes, Your Honor. Thank you. Just a couple of things. One is the interpretation of the statute. Judge Murphy, you asked about those three different things. And when I explain this, you're going to understand why we call this the tort statute I propose. There are three different things that are involved here. One is the defective construction or the deficiency in the construction. That's the first thing. That clearly would be a homeowner versus the general contractor. But we have also under here the potential for third-party claims for injuring a property, real or personal, rather than out of any such deficiency. Let's say because of the deficient construction of the pool, it leaked and flooded her house and the basement wall was collapsed. That would be property damage separate and apart from the actual deficient construction. It would be arising out of that. And then injury to the person for wrongful death. Let's say that while someone was in the basement and the wall collapsed, they were killed as a result of that. So there are three different things. You are correct, I believe, that there are three different things that are at issue here. So that's why it's so important to parse out and look at the language of the first part, which is the action to recover for deficiency in the design construction. What would you say to Judge Larson's question that the Tennessee State Courts have already answered this question for us and they've proceeded to find the two-party purchaser-property and purchaser-constructor relationship for the first part of the statute? First of all, Judge Larson, I share your skepticism that Clinton Seafood answers the question, but all of the cases that are cited... I thought in your answer to Judge Bush, you said common law indemnity is covered by the statute. Now, it's the issue of whether there... In Clinton Seafood, what happened in all of the cases that are cited here for the proposition that the statute of her post does cover is always the situation where the injured party, in other words, the person who falls under the ambit of the statute who is making a claim to recover damages for, in that case, personal injury because she fell on a ramp to the Long John Silvers. So, in each of those cases, it's who's making the claim. The person who is making a claim for damages against the party who is responsible for that. And that is a different thing than the party who has now been held responsible for someone else's negligence to be called on to what can you do about it. In each of the cases at state court where that's been the case, there was no contract involved. In other words, there was no specific contractual right that that general contractor had come up with its subcontractor to do what Brightview did here, and that is to say, you know, after four years, everybody's good. No one can make any claims directly. However, Brightview, let's say on the last day, let's say on the last day, Ms. Hinman, the four-year time frame, Ms. Hinman files her lawsuit. Brightview has absolutely no recourse, and that eviscerates through no fault of its own through the actions of a third person, Ms. Hinman, of when she's going to file her lawsuit has eviscerated a valuable contractual right that Brightview has contracted with its subcontractor for. So basically, after four years, everybody's gone, everybody's off the hook. However, to the extent we get sued on the last day, we have to face that and that harmless language is broad enough that it includes any claim, any suit, any other damages. It also allows them to recover for any attorney's fees that they should have to expend should they be called on to defend a claim because of Georgia Gennett's deficient construction. So it is a specific valuable contractual right, and it's when all of that is just called contractual indemnity is why the court fell into the trap that it did. It does not address the specific contractual indemnification claim, which is a specific subgrant of a contractual right. Thank you very much. MR. MILLER Thank you very much, counsel. We appreciate the arguments from both sides, and we'll take the case under submission.